UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LITA K. L. M.-B.,[1] | : | Case No. 2:24-cv-3267 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**DECISION AND ENTRY**

Plaintiff Lita K. L. M.-B. brings this case before the Court challenging the Social Security Administration's denial of her application for Supplemental Security Income (SSI). This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #7).

**I.     Background**

The Social Security Administration provides SSI to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

In the present case, Plaintiff protectively applied for benefits on March 3, 2021[2], alleging disability due to several impairments, including depression, anxiety, pain in legs, throwing up after eating, and ear pain. (Doc. #7-6, *PageID* #324). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a video hearing before Administrative Law Judge (ALJ) Teresa L. Hoskins-Hart. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since March 3, 2021, the application date.

Step 2: Prior to attaining age 18, she had the following severe impairments: anxiety disorder; depressive disorder; attention deficit hyperactivity disorder (ADHD); post-traumatic stress disorder (PTSD); somatoform disorder; unspecified personality disorder and bilateral hearing loss.

Step 3: Prior to attaining age 18, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Prior to attaining age 18, [Plaintiff] did not have an impairment or combination of impairments that functionally equaled the severity of the listings.

Because [Plaintiff] did not have an impairment or combination of impairments that met, medically equaled any listing or functionally equaled the listings, [Plaintiff] was not disabled prior to attaining age 18.

[Plaintiff] has not developed any new impairment or impairments since attaining age 18.

Since attaining age 18, [Plaintiff] has continued to have a severe impairment or combination of impairments.

---

[2] An application for SSI was previously filed on Plaintiff's behalf when she was a minor on October 22, 2018. That application was denied by administrative decision March 30, 2020. (Doc. #7-3, *PageID* #s 119-40). It does not appear that Plaintiff appealed that decision.

|  |  |
|---|---|
|  | Since attaining age 18, [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity, or the most she could do despite her impairments, since attaining age 18, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the ability "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she must avoid concentrated or frequent exposure to loud noise or hazards in the work setting. Also, [Plaintiff] has no limitation in the capacity to understand, remember, and carry out simple, detailed, and complex instructions and can use judgment to make such tasks related work decisions; she can sustain concentration, attention, and pace sufficient enough to carry out those instructions for two-hour intervals over the course of typical eight-hour workday; she can work in occupations requiring only occasional interactions with the public; and she can adapt to routine changes in work setting or work processes." |
|  | She has no past relevant work. |
| Step 5: | Considering Plaintiff's age, education, work experience, and residual functional capacity, since attaining age 18, there are jobs that exist in significant numbers in the national economy that she can perform. |

(Doc. #7-2, *PageID* #s 54-72). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability since March 3, 2021, the date the application was filed. *Id.* at 72.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 49-72), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #9), and Plaintiff's Reply (Doc. #10). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

**II.**     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported

3

by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III. Discussion

In her sole assignment of error, Plaintiff asserts that the ALJ reversibly erred in evaluating her symptom severity. (Doc. #8, *PageID* #s 1200-07). In response, the Commissioner maintains that the ALJ considered the evidence in the record—including the objective evidence, Plaintiff's activities of daily living, and Plaintiff's treatment history—and reasonably concluded that Plaintiff's allegations of disabling symptoms were not entirely reliable. (Doc. #9, *PageID* #s 1211-16).

When a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 416.929; Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, *3-7 (October 23, 2017).[3] First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id.*; *See also* 20 C.F.R. § 416.929(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that she considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20- cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).  Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms

---

[3] SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (clarifying applicable date of SSR 16-3p).

with the record as a whole. *See id.* Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but found her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the objective medical evidence. (Doc. #7-2, *PageID* #s 68-70).

Plaintiff contends that "the ALJ's RFC determination is unsupported by substantial evidence because [she] improperly evaluated Plaintiff's subjective complaints pursuant to SSR 16-3p and mischaracterized the record to find improvement while ignoring a probative line of evidence that was consistent with Plaintiff's subjective complaints." (Doc. #8, *PageID* #s 1200-07). A key component of the probative line of evidence that Plaintiff asserts provides the more wholistic view of Plaintiff's mental health impairments is her 2019 psychiatric evaluation with Dorothy Rosenke, Psy.D.. *Id*. at 1204. Plaintiff was evaluated by Dr. Rosenke on May 10, 2019. (Doc. # 7-7, *PageID* #s 440-50). Dr. Rosenke reported that Plaintiff presented with a blunted affect, poor insight, terse responses, reluctance to elaborate, defensive and irritable demeanor, inability to build rapport, and lack of response to praise. *Id.* at 443. Dr. Rosenke opined that Plaintiff's "profile was marked by significant elevations across a number of different scales, indicating a broad range of clinical features and increasing the possibility of multiple diagnoses." *Id.* at 447. She identified concerns about Plaintiff's pessimism and [sense] of hopelessness." *Id.* Dr. Rosenke

also noted, "[Plaintiff] has reported a level of depressive symptomatology that is unusual even in clinical samples." *Id.*

Plaintiff additionally argues that Dr. Rosenke's 2019 evaluation findings were consistent with Plaintiff's mother's 2023 hearing testimony. (Doc. #8, *PageID* #1205). During the administrative hearing, Plaintiff's mother testified that she had observed Plaintiff's change in mood, isolation, lack of communication, an inability to get out of the house, and angry episodes. (Doc. # 7-2, *PageID* #105). She described violent and dangerous behavior during these episodes. *Id.* She also described Plaintiff's inability to physically function when affected by PTSD, stating that Plaintiff "becomes like a noodle." *Id.* at 106. Her mother described having to carry Plaintiff to the bathroom when her PTSD "acts up." *Id.* at 106-07. She did not believe Plaintiff could work because of her mental health issues as well as her chronic emesis. *Id.* at 108.

After a review of the entire record, Plaintiff's argument is not well-taken for several reasons. First, while Plaintiff argues that the ALJ erred by ignoring Dr. Rosenke's May 2019 psychological evaluation, Plaintiff ignores the findings of Dr. Rosenke's April 2023 psychological evaluation. (Doc. #7-8, *PageID* #s 879-86). In her April 2023 assessment, Dr. Rosenke found that Plaintiff's self-reported ratings of adjustment showing "significant elevations on every possible diagnosis assessed by the measure," although "psychometrically valid, appeared to suffer from a pattern of over-endorsement." *Id*. at 886. This finding directly contradicts Plaintiff's testimony regarding her symptom severity, by the same psychologist that Plaintiff asserts the ALJ improperly ignored. The ALJ did, however, cite to Dr. Rosenke's February 2023 observation that Plaintiff had "euthymic mood, good motivation and fully cooperative behavior" in her symptom severity

analysis. (Doc. #7-2, *PageID* #69) (citing Doc. #7-8, *PageID* #874). Therefore, Plaintiff's assertion that the ALJ mischaracterized Plaintiff's treatment records by not discussing Dr. Rosenke's May 2019 evaluation is unpersuasive, given that Dr. Rosenke's later evaluation aligned with the ALJ's findings.

Notably, while Plaintiff contends that her mother's testimony was consistent with her symptomology and Dr. Rosenke's 2019 psychological evaluation, Plaintiff's teachers' evaluations starkly contrasted Plaintiff's subjective complaints and her mother's testimony. In May 2019, as part of Dr. Rosenke's evaluation, Ms. Persico indicated that Plaintiff has problems that "slightly or occasionally affect her academics and her peer relationships," but had no additional concerns about Plaintiff as a student and noted that Plaintiff had "done a great job of completing assignments and being part of class this year." (Doc. #7-7, *PageID* #s 445-446).  In August 2019, three months after Dr. Rosenke's evaluation, Ms. Brown found no problems in Plaintiff's ability in acquiring and using information, attending and completing tasks, interacting and relating with others, or moving about and manipulating objects. *Id*. at 468-71. While Ms. Brown did find a slight problem in Plaintiff's caring for herself, she provided an explanation that Plaintiff "has no major concerns in this area."  *Id*. at 472. Finally, in June 2021, Ms. Walton, Plaintiff's education plan case manager, indicated that Plaintiff had no problems in the areas of interacting and relating with others, moving about and manipulating objects, and caring for herself. (Doc. #7-6, *PageID* #s 337-39). Although Ms. Walton found a slight problem in Plaintiff's ability in comprehending and doing math problems and attending and completing tasks, and an obvious problem with working at a reasonable pace/finishing on time, she did not provide any narrative explanation for her findings

8

that matched the level of symptomology that Plaintiff or Plaintiff's mother testified at the hearing. *Id*. at 335-36. The ALJ noted at several points in her decision that Plaintiff's teachers had not found significant limitations in Plaintiff. (Doc. #7-2, *PageID* #s 59, 65-67). Therefore, Plaintiff's assertion that the ALJ mischaracterized or cherry-picked the record ignores multiple teachers' questionnaires finding her less limited in her symptomology.

Additionally, Plaintiff points to her treatment records at Duke Health Clinic regarding her chronic emesis as another portion of medical evidence that the ALJ mischaracterized in her symptom severity analysis. (Doc. #8, *PageID* #1206). While Plaintiff contends that the "significant symptomology and its profound effect on her well-being" makes it uncertain whether the ALJ analyzed the evidence properly, the ALJ did review and incorporate her chronic emesis records into her analysis. (Doc. #7-2, *PageID* #65, 69-70). The ALJ recognized that Plaintiff had been diagnosed with somatoform disorder, the underlying cause of her chronic emesis, and that it caused a limitation to Plaintiff. *Id*. at 65. She also noted that when Plaintiff's teachers inquired whether Plaintiff's somatoform disorder prevented in-person attendance, Plaintiff's providers responded that "there [was] no psychiatric barrier for patient to return to school or participating in schoolwork." *Id*. at 65, 69-70, *citing* Doc. #7-8, *PageID* 1128. The ALJ relied on this evidence in ultimately finding that limitation to be "less than marked" and the effects of Plaintiff's symptoms to be less extreme than alleged. *Id*. Notably, Plaintiff's providers had prognosed that the most likely cause of Plaintiff's chronic emesis was "psychological" and "psychogenic" at multiple points in the record. (Doc. #7-7, *PageID* #545, 776). Furthermore, the ALJ specifically included mental limitations in Plaintiff's RFC for her mental impairments and treatment, one of which was

her somatoform disorder. *Id.* at 70. Therefore, rather than mischaracterize records related to somatoform disorder and its symptoms, the ALJ specifically accounted for these records in her decision.

Furthermore, while Plaintiff contends that the ALJ could not solely rely on the "normal mental status examinations" or lack of "in-patient psychiatric treatment" when discounting Plaintiff's subjective complaints, the undersigned finds that the ALJ additionally considered Plaintiff's daily activities in her symptom severity analysis. (Doc. #7-2, *PageID* #s 69-70). In January and February 2023, Plaintiff reported doing "pretty well," was sleeping well, and stated that she was interested in makeup trends, a Chinese pop dance group, drawing fashion designs, and talking with her boyfriend. (Doc. #7-8, *PageID* #s 1123, 1129-31). Upon further review of the record, Plaintiff endorsed at different points during the alleged period of disability that she had "soccer, fishing, [and] [T]aekwondo" as hobbies, as well as "singing, dancing, and writing." (Doc. #7-7, *PageID* #835); (Doc. #7-8, *PageID* #854). Since Plaintiff's subjective complaints and her mother's testimony of self-isolation, violent outbursts at home, inability to function when affected by PTSD, and inability to work caused by her chronic emesis were inconsistent with objective medical evidence and other evidence, the ALJ did not err in discounting them. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Additionally, to the extent that Plaintiff contends that the ALJ did not account for every one of her subjective complaints, an ALJ is not required to discuss "every piece of evidence in the record for his decision to stand," if the ALJ considered the evidence. *Thacker v. Comm'r of Soc. Sec.,* 99 F. App'x 661, 665 (6th Cir. 2004).[4]

---

[4] While *Thacker* concerned SSR 96-7p, not its superseding SSR 16-3p, the case law remains fully applicable to SSR 16-3p determinations. *See Prichard v. Comm'r of Soc. Sec.*, No. 1:19-CV-573, 2020 WL 5544412, at *6 (S.D. Ohio

The ALJ's reliance on objective evidence, Plaintiff's teachers' questionnaires, Plaintiff's treatment history, and Plaintiff's daily activities demonstrates that the ALJ considered the entire record in assessing Plaintiff's symptom severity.

Accordingly, Plaintiff's Statement of Errors is not well-taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case is terminated on the docket of this Court.

September 29, 2025

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

---

Sept. 16, 2020) (Bowman, M.J.).